UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ANDREW CASH, | ) |
| | ) |
| Plaintiff; | ) |
| | ) |
| vs. | ) |
| | ) |
| The Governors of Missouri State University: | ) |
| PETER HOFHERR, JOE CARMICHAEL, | ) |
| STEPHEN B. HOVEN, CARRIE TERGIN, | ) Case No.: 2016-CV- |
| BEVERLY MILLER, GREGORY SPEARS, | ) |
| KENDALL SEAL, TYREE LEWIS, GABRIEL | ) JURY TRIAL DEMANDED |
| E. GORE, and VIRGINIA FRY, all in their | ) |
| official capacities; CLIFTON M. SMART III, | ) |
| individually and in his official capacity as | ) |
| President of the Missouri State University System; | ) |
| KRISTI PERRYMAN, former MSU Internship | ) |
| Coordinator for the Counseling Department, | ) |
| individually; TAMARA ARTHAUD, Counseling | ) |
| Department Head, individually and in her official | ) |
| capacity; ANGELA ANDERSON, MSU faculty | ) |
| member, individually and in her official capacity, | ) |
| | ) |
| Defendants. | ) |

COMPLAINT

Plaintiff Andrew Cash, by and through counsel, and for his Complaint against Defendants, states as follows:

INTRODUCTION

Missouri State University ("MSU" or the "University") is one of several state funded institutions of higher education in southwest Missouri. Many men and women, young and old, pursue academic studies at MSU in order to equip themselves with the skills necessary to pursue their career and life goals. Plaintiff Andrew Cash was one of these students. He was just a few courses shy of graduating with a M.S. in Counseling from MSU, and was working on his internship at a Christian based counseling agency, when he was penalized for expressing his religious views regarding counseling same sex couples on relationship issues. This happened in the spring of 2011. He was ordered immediately to discontinue this internship (a necessary

1

prerequisite for his degree), and was thereafter retaliated against by being placed in a remediation track and, in November 2014, removed from the Master's program.

## JURISDICTION AND VENUE

1. This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

2. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over the state law claims made herein pursuant to 28 U.S.C. § 1367.

4. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. § 2201-02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorney's fees under 42 § 1988.

5. Venue is proper in this district pursuant to 28 U.S.C. § 139l(b) and LR 3.2 because the Defendants reside in this district and all of the acts described in this Complaint occurred in this district.

## PLAINTIFF

6. Plaintiff Andrew Cash is domiciled in Missouri. He was a Master's degree candidate at Missouri State University from September 2007 until November 2014. Plaintiff is a Christian with sincerely-held religious beliefs on issues of morality.

## DEFENDANTS

7. Defendant Peter Hofherr is President of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

8. Defendant Carrie Tergin is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in her official capacity.

2

9. Defendant Joe Carmichael is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

10. Defendant Gregory Spears is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

11. Defendant Kendall Seal is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

12. Defendant Gabriel Gore is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

13. Defendant Virginia Fry is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in her official capacity.

14. Defendant Beverly Miller is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in her official capacity.

15. Defendant Stephen Hoven is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

16. Defendant Tyree Lewis is a student member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is

responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

17. Defendant Dr. Clifton Smart III is the President of Missouri State University, a public university organized and existing under the laws of the State of Missouri, is responsible for overseeing campus administration, and is sued both in his official and individual capacities.

16. Defendant Dr. Kristi Perryman was the Internship Coordinator of the Counseling Department at MSU who removed Plaintiff from his internship for the sole reason that he would refuse to counsel a gay couple on relationship issues due to his religious beliefs (instead referring them to a more qualified and experienced counselor). She was also his academic advisor since he began the program in 2007. She is sued individually.

17. Defendant Dr. Tamara Arthaud is the Head of the Department of Counseling. She is sued individually and in her official capacity.

18. Defendant Dr. Angela Anderson is a faculty member and a member of a committee that engaged in retaliatory disciplinary action against Plaintiff for exercising his constitutional rights, and who was charged with overseeing his Remediation Plan. She is sued individually and in her official capacity.

## FACTUAL BACKGROUND

### Discrimination Against Plaintiff's Religious Beliefs

19. Plaintiff Andrew Cash began his studies at MSU, seeking his M.S. in Counseling, in September 2007. 600 hours of clinical internship are required for this degree, with 240 hours "face-to-face". Plaintiff secured an internship approved by the Defendants at Springfield Marriage and Family Institute (SMFI) under the supervision of W.K. Boyce, Executive Director, Licensed Professional Counselor (LPC), and an approved and State-licensed student supervisor. Boyce and his agency were listed on the Department of Counseling's approved site and on the supervisor list. All Counseling students were entitled to apply for and complete internships at SMFI. At least one previous Counseling student had successfully completed an internship at SMFI.

20. In the fall of 2010, Dr. Kristi Perryman, the Counseling Department's Coordinator for Internships, approved Plaintiff's application to enter into an internship at SMFI. Plaintiff commenced interning there in January of 2011.

4

21. As part of course requirements, each student was required to make a class presentation related to the Counseling field. Plaintiff proposed to Kara Davis, course instructor, that his presentation be on the topic of Christian counseling and its unique approach and value to the Counseling profession, as such an approach to counseling was not an area or topic of instruction in the MSU curricula in the Counseling program.

22. As a matter of course, a student's internship site is not allowed to be the source of the presentation related to the Counseling field. However, Plaintiff made a compelling proposal to Ms. Davis that Christian counseling is well-established as an approach and major contribution to the counseling profession. Ms. Davis said that she agreed that this would be an "excellent" presentation topic and would expose the students to a unique and popular counseling approach, especially in the locale in question.

23. On or about April 11, 2011, the presentation was made at SMFI by Boyce and his son, Ken, who was the Marketing Director of SMFI, as well as Boyce's daughter, who was the Chief Financial Officer and Intake Coordinator at SMFI.

24. Boyce explained SMFI's Christian-based approach to counselling, and indicated that the Christian value foundation of the counseling practice was well known to anyone who came to seek counseling. A question was asked if SMFI prays with clients. Referencing an openly-displayed Bible Boyce said that he would pray with a client upon request. A student asked Boyce if SMFI counsels gay couples. Boyce said that he would counsel gay persons as individuals, but not as couples, because of his religious beliefs, but would refer the couple for counseling to other counselors he knew who did not share his religious views.

25. A week later (April 18, 2011) in class, the presentation at SMFI was topic of lively discussion. When Plaintiff arrived home after class that night, he received an email from Dr. Perryman directing him to meet with her "in person as soon as possible" regarding his internship at SMFI. The following day Dr. Perryman peremptorily informed Boyce at SMFI and the Plaintiff that Plaintiff was not allowed to continue interning at SMFI, and that the organization would be forthwith removed from the Counseling Department's approved site and supervisor list until certain "ethical concerns" had been addressed.

26. When Plaintiff met with Dr. Perryman she questioned him closely about SMFI's and his own views toward counseling gay persons. She asked him whether, if a gay couple came to him for counseling for their relationship, would he counsel them? Plaintiff said that he would counsel

5

them individually on issues related to depression, anxiety, etc., but not as a couple, but that he would refer them elsewhere.

27. Plaintiff stated that his approach to counseling is centered on his core beliefs, values and Christian worldview and these would not be congruent with the likely values and needs of a gay couple, who, for these reasons, would be best served by a counselor sharing their core value system and core beliefs.

28. Dr. Perryman then told Plaintiff that he could not hold these views, which she deemed to be unethical, and which, she asserted, contradicted the American Counseling Association's code of ethics as discriminatory toward gay persons.

29. Dr. Perryman, who was also Plaintiff's Student Advisor, directed Plaintiff not to return to his internship at SMFI, the internship that she had approved just three months before.

30. Dr. Perryman initially allowed Plaintiff to seek out a new site, giving him directions and extending deadlines to allow him to finish his internship. However, she then required him to read and comment on an article titled, "Implications for Refusing to Counseling Homosexual Relationships," as a condition for determining whether he was suitable to return to an internship.

31. Dr. Perryman told Plaintiff that based upon her review and approval of that paper, she would allow him to continue with internship. She said in that email that she wanted to see what Plaintiff "had learned from this experience."

32. Dr. Perryman was satisfied with Plaintiff's essay, observing that "[f]rom your article review, it sounds as though you[r] view [of] the ethical considerations of working with diverse populations has changed."

33. After searching diligently over a period of time, Plaintiff found a new site and turned in his application before the deadline in November 2012.

34. However, Dr. Perryman was upset with Plaintiff's application because, according to her, it disregarded her earlier directive that none of the SMFI clinic hours could be counted by Plaintiff. Instead of consulting with Plaintiff on these issues, she met with fellow educators (on November 12, 2014) and discussed her dissatisfaction with Plaintiff, in particular that he still defended the SMFI site, claiming his clinical hours there were valid, and "still very much defend[ing] his previous internship stating that there was nothing wrong with it."

6

34. After that meeting, Dr. Perryman informed Plaintiff that he needed to meet with her and the department head, Defendant Dr. Tamara Arthaud, the Counseling Department Head, a meeting which occurred on or about November 14, 2012.

35. In that meeting, Dr. Arthaud and Dr. Perryman did not mention anything or make any reference about this past experience regarding counseling gay couples, but Dr. Perryman stated in a later letter recommending remediation that she told Plaintiff in the meeting with Dr. Arthaud that she thought he had "a change of heart in regard to working with Gay/Lesbian clients and that he seemed to have gained an understanding of what was inappropriate about his previous behavior," but that Plaintiff "argued that this was not correct and again defended the Springfield Marriage and Family Institute and the work he did there."

36. Plaintiff was caught off guard as they were informing him of departmental and faculty concerns about dispositional, academic and personal issues they claimed he had which would prevent him from re-entering an internship. These concerns were made clear in a November 26, 2012 letter from Dr. Perryman to Dr. Arthaud.

37. As a result of the letter, a panel/committee of faculty members was apparently formed to determine whether Plaintiff would be dismissed from the program or if he would be given an opportunity to remediate.

38. Plaintiff was instructed to reply to the letter Dr. Perryman wrote to Dr. Arthaud, which would be considered by the committee. Plaintiff did so.

39. Defendants constructed a Remediation Plan for Plaintiff which required him to attend 10 sessions of Counseling to address countertransference issues, to audit two courses he had already passed with an "A" grade, to participate in a few supervised sessions of practicum, and then to complete a self-assessment which would be reviewed by the committee before deciding whether Plaintiff could re-enter a clinical internship.

40. The committee confirmed that all face-to-face hours he had completed at SMFI (51 of the required 240 clinical hours) were invalidated and disallowed.

41. Plaintiff appealed this decision to Dr. Arthaud, as required by MSU policy.

42. This appeal was denied and Plaintiff appealed to the Dispositional and Retention Committee. This appeal was denied.

43. Plaintiff then appealed to the Dean of the College of Education at MSU. This appeal was denied.

44. Plaintiff then appealed to the Provost's office at MSU. This appeal was denied as well. In each response to Plaintiff's appeals, no evidence was produced that Plaintiff had any dispositional, academic, personal or professional concerns, including advising notes, formal or informal complaints, nothing in his student file, and nothing that was of any concern while he was advancing and being promoted through the counseling program at MSU and when he had completed over a 1/2 semester of internship and before he was removed from internship.

45. Plaintiff had a 3.81 GPA, in good standing with the University, and a clean record.

46. In November of 2014, Plaintiff was called into a meeting with the department head and the Dean of the College of Education and was informed he was being removed from the program.

47. Plaintiff is no longer a candidate for the M.S. in Counseling; he has lost all that he has worked for in his goals and desire to be a Counselor.

48. Plaintiff had done all he could do and attempted everything the program required of him, to no avail.

49. Plaintiff passed the National Counselor Exam, NCE, and all he needed to graduate was to finish his internship hours, finish his Seminar Paper, and take comps. He was very close to realizing his dream to become a counselor, a dream that has now been dashed.

50. Plaintiff's experience at MSU has been devastating, crushing, and tormenting, culminating in his termination from the program -- all because he interned with a Christian organization and expressed his religious beliefs on a hypothetical question about counseling a gay couple on relationship issues.

51. Plaintiff was targeted and punished for expressing his Christian worldview regarding a hypothetical situation concerning whether he would provide counseling services to a gay/homosexual couple. Since he did not give the "correct" answer required by his counseling instructors, he was considered unsuitable for counseling and terminated from the program.

52. The experience has been a living nightmare for Plaintiff, who has lost countless hours of sleep, and lives with gut-wrenching thoughts and fears about his future and ability to enter the counseling profession, and experiences of emotional grief, anxiety and panic, each day since April of 2011.

53. Plaintiff has been unable to advance himself in his profession, e.g., through getting a license to practice in the state of Missouri with an on-line degree.

8

Case 6:16-cv-03155-MDH   Document 1   Filed 04/19/16   Page 8 of 15

54. Between the time Plaintiff was removed from his internship with SFMI until he was dismissed from the program in late 2014, he was writing appeals and waiting for responses.

55. Plaintiff also filed a grievance with the Office for Institutional Equity and Compliance.

56. Upon their investigation, the Office for Institutional Equity and Compliance determined that although it was inconclusive that religious discrimination had occurred, that Dr. Perryman's personal feelings about this experience were the catalyst for Plaintiff's dismissal from internship.

57. To no avail, this report was dismissed by all those to whom Plaintiff made his appeal.

## FIRST CAUSE OF ACTION

**Violation of Plaintiff's First Amendment Right to Freedom of Expression (42 U.S.C. § 1983)**

58. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

59. By prohibiting Plaintiff from completing an approved clinical internship because of his religious beliefs that Defendants did not share, by denying him clinical hours he properly earned, by requiring him to recant his beliefs, and by forcing him into a remediation program to repeat courses he had already successfully completed, and finally by expelling him from the Counseling Program when he had earned 39 of 48 credit hours required for his counseling degree, all because of his religious beliefs and free expression, Defendants abridged Plaintiff's rights to freedom of thought, speech, religion, and association, and denigrated his personal and professional abilities, among other things, all through a policy and practice to deprive Plaintiff of his ability to freely express his ideas on issues of religious and political concern at MSU and in the counseling profession.

60. Defendants, acting under color of state law, and according to policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint and deprived Plaintiff of his rights to freedom of speech and expression secured by the First Amendment to the U.S. Constitution.

61. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. He is entitled to an award of monetary damages, including punitive damages, and equitable relief.

62. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including his reasonable attorney fees.

## SECOND CAUSE OF ACTION

**Violation of Plaintiff's First Amendment Right to Freedom of Expression--First Amendment Retaliation (42 U.S.C. § 1983)**

63. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

64. By prohibiting Plaintiff from completing an approved clinical internship because of his religious beliefs that Defendants did not share, by denying him clinical hours he properly earned, by requiring him to recant his beliefs, and by forcing him into a remediation program to repeat courses he had already successfully completed, and finally by expelling him from the Counseling Program when he had earned 39 of 48 credit hours required for his counseling degree, all because of his religious beliefs and free expression, Defendants by policy and practice retaliated against Plaintiff for expressing his religious beliefs and views in regard to a matter of important in the counseling profession.

65. Defendants, acting under color of state law, and according to policy and practice, have engaged in actions that are retaliatory and have therefore deprived Plaintiff of his established rights to freedom of speech and expression guaranteed by the First Amendment to the United States Constitution.

66. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. He is therefore entitled to an award of monetary damages, including punitive damages, and equitable relief.

67. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including Plaintiff's reasonable attorney fees.

## THIRD CAUSE OF ACTION

**Violation of Plaintiff's First Amendment Right to Freedom of Expression Compelled Speech (42 U.S.C. § 1983)**

68. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

69. By requiring Plaintiff to "reflect on his clinical experience" and forego his religious beliefs in order to continue in the MSU Counseling program, as evidenced, inter alia, by the retaliation against him caused by Defendants' perception that he had not changed his religious beliefs and had not adopted Defendants' preferred beliefs, and selecting the beliefs he should

10

espouse in counseling, among other things, Defendants by policy and practice compelled Plaintiff to express ideas that are contrary to his religious and political beliefs.

70. Defendants, acting under color of state law, and according to policy and practice, compelled Plaintiff to advocate and speak in favor of ideas which are not his own, thereby depriving Plaintiff of his clearly established rights to freedom of speech and expression secured by the First Amendment to the United States Constitution.

71. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. He is therefore entitled to an award of monetary damages, including punitive damages, and equitable relief.

72. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

### Violation of Plaintiff's First Amendment Right to Freedom of Expression Unconstitutional Conditions Doctrine (42 U.S.C. § 1983)

81. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

82. By requiring Plaintiff to express ideas contrary to ideas he previously expressed in furtherance of his rights to freedom of thought, speech, religion, and association, and by conditioning his continued participation in the master of counseling program at MSU, among other things, Defendants by policy and practice have deprived Plaintiff of his ability to freely express his ideas on issues of religious and political concern at MSU and in the social work profession.

83. Defendants, acting under color of state law, and according to policy and practice, placed unconstitutional conditions on Plaintiff's continuing participation in the master of counseling program and deprived Plaintiff of his clearly established rights to freedom of speech and expression secured by the First Amendment to the United States Constitution.

84. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. She, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

85.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including his reasonable attorney fees.

## FIFTH CAUSE OF ACTION

**Violation of Plaintiff's First Amendment Right to Free Exercise of Religion
(42 U.S.C. § 1983)**

86.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

87.     By requiring Plaintiff to "reflect on his clinical experience" and forego his religious beliefs in order to continue in the MSU Counseling program, as evidenced, inter alia, by the retaliation against him caused by Defendants' perception that he had not changed his religious beliefs and had not adopted Defendants' preferred beliefs, and selecting the beliefs he should espouse in counseling, among other things, Defendants by policy and practice deprived Plaintiff of his right to free exercise of religion at MSU and in the counseling profession.

88.     Defendants, acting under color of state law, and according to policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint and deprived Plaintiff of his clearly established right to free exercise of religion secured by the First Amendment to the United States Constitution.

89.     Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. He is therefore entitled to an award of monetary damages, including punitive damages, and equitable relief.

90.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including his reasonable attorney fees.

## SIXTH CAUSE OF ACTION

**Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Law
(42 U.S.C.. § 1983)**

91.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

92.     By requiring Plaintiff to "reflect on his clinical experience" and forego his religious beliefs in order to continue in the MSU Counseling program, as evidenced, inter alia, by the retaliation against him prompted by Defendants' perception that he had not changed his religious beliefs and had not adopted Defendants' preferred beliefs, and selecting the beliefs he should espouse in counseling, among other things, and treating Plaintiff differently than similarly

situated students because he is a Christian and because of his Christian beliefs, among other things, Defendants by policy and practice denied Plaintiff equal protection of the law because of his religious status and beliefs.

92. Defendants, acting under color of state law, and according to policy and practice, have engaged in actions that are discriminatory and have therefore deprived Plaintiff of his clearly established equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution.

93. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. He is, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

94. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including his reasonable attorney fees.

## SEVENTH CAUSE OF ACTION

**Violation of Plaintiff's Fourteenth Amendment Right to Procedural Due Process (42 U.S.C. § 1983)**

95. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

96. By failing to provide Plaintiff with adequate notice of cancellation of his internship with SMFI, and setting Plaintiff up to fail to complete the requirements necessary to complete the Master's program in counseling, Defendants thereby deprived Plaintiff of his right to procedural due process.

97. Defendants, acting under color of state law, and according to policy and practice, failed to provide Plaintiff with his clearly established right to procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution.

98. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. He, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

99. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of attorney's fees as well.

## EIGHTH CAUSE OF ACTION

## Violation of Plaintiff's Right to Free Exercise of Religion Under Missouri's Religious Freedom Restoration Act (Mo. Stat. Ann. §§ 1.302 & 307)

100. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

101. By prohibiting Plaintiff from completing an approved clinical internship because of his religious beliefs that Defendants did not share, by denying him clinical hours he properly earned, by requiring him to recant his beliefs, and by forcing him into a remediation program to repeat courses he had already successfully completed, and finally by expelling him from the Counseling Program when he had earned 39 of 48 credit hours required for his counseling degree, all because of his religious beliefs and free expression, Defendants by policy and practice discriminated against Plaintiff s religious beliefs and deprived Plaintiff of his right to free exercise of religion at MSU and in the counseling profession.

102. Defendants, acting under color of state law, and according to policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint and deprived Plaintiff of his clearly established right to free exercise of religion secured by Missouri's Religious Freedom Restoration Act, Mo. Stat. Ann. §§ 1.302 & 307.

103. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. He is, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

104. Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including his reasonable attorney fees.

WHEREFORE, Plaintiff Plaintiff respectfully requests that the Court enter judgment against Peter Hofherr, Joe Carmichael, Stephen B. Hoven, Carrie Tergin, Beverly Miller, Gregory Spears, Kendall Seal, Tyree Lewis, Gabriel E. Gore, Virginia Fry, Clifton M. Smart III, Kristi Perryman, Tamara Arthaud, and Angela Anderson, and provide Plaintiff with the following relief:

1. Declaratory and injunctive relief reinstating Plaintiff into the MSI Counseling Program with adequate safeguards so that he may complete his MS in Counseling degree;

2. Damages, including punitive damages, in an amount to be determined by the Court;

3. Plaintiff's reasonable attorney fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

4. All other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ Daniel Baker
Law Office of Cox & Associates
202 West 4th St.
Sedalia, MO 65301
Missouri Bar No. 60642
Tel. 660-826-5488
Fax. 660-826-2928
daniel@sedalialawyers.com

Of Counsel
THOMAS MORE SOCIETY
Thomas Brejcha*
Thomas Olp*
Jason R. Craddock*
19 South LaSalle St. Suite 603
Chicago, IL 60603
312-782-1680 (tel)
312-783-1887 (fax)
tolp@thomasmoresociety.org
(*Pro hac vice to be submitted)

Of Counsel
GERARD A. NIETERS
Nieters & Associates, P.C.
19 Osperey Way
O'Fallon, MO 63368
Missouri Bar No. 34164
Tel. (314) 368-8460
Fax 636 978 6603
gerardnieters@chargter.net

ATTORNEYS FOR PLAINTIFFS

## VERIFICATION OF COMPLAINT

I, Andrew Cash, a citizen of the United States and resident of the State of Missouri, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

/s/
_____
Andrew Cash